**John SLOAN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 49A02–0301–CR–00014.**

Court of Appeals of Indiana.

Sept. 4, 2003.

Gregory Bowes, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Following a jury trial, Appellant John Sloan was convicted of Burglary, as a Class B felony,[1] and Conducting a Performance Harmful to Minors, a Class D felony.[2] Upon appeal, Sloan presents three issues for our review, which we restate as:

I. Whether the trial court properly denied Sloan's motion for mistrial;

II. Whether the trial court properly denied Sloan's motion for a directed verdict; and

III. Whether the sentence imposed by the trial court is appropriate.

We affirm.

The facts most favorable to the jury's verdict reveal that on December 9, 2001, Sloan broke into the home of Melissa Holt where eight-year-old A.R., the daughter of Holt's boyfriend, was sleeping on the couch. A.R. awoke when she felt someone pull down her underwear. A.R. saw a man on the couch exposing and manipulating his penis. The man then left the room, and A.R. went to get her father, but the intruder was no longer in the home. Ms. Holt noticed that a window had been removed in the room where A.R. had been sleeping. Fingerprints taken from this window matched Sloan's fingerprints. On July 5, 2002, the State charged Sloan with Burglary and Conducting a Performance Harmful to Minors.

Before trial, Sloan moved the trial court to dismiss the charges against him, arguing that the acts he was alleged to have committed did not constitute a "performance" as defined by statute. The trial court denied this motion. After the State presented its case-in-chief, Sloan moved for a directed verdict based upon the same grounds. This too was denied. Also at trial, a police detective testified that Sloan had been arrested during another investigation. Sloan objected and moved for a mistrial, which the trial court denied. The jury found Sloan guilty as charged, but the trial court entered a judgment of conviction only as to the burglary and sentenced Sloan to twenty years incarceration.

---

1. Ind.Code § 35–43–2–1 (Burns Code Ed. Supp.2002).

2. Ind.Code § 35–49–3–3 (Burns Code Ed. Supp.2002).

## I

### Mistrial

■ Sloan claims that the trial court should have granted his motion for a mistrial. Detective John Green of the Indianapolis Police Department testified for the State. Green testified that he worked "child abuse sex crimes." Transcript at 115. During direct examination, Green testified that Sloan had not been arrested immediately after the fingerprint evidence indicated that he was the one who had broken into Ms. Holt's home. The State then asked, "When did the Defendant eventually get arrested?" Green replied, "It was on another investigation." *Id.* at 122. Sloan immediately objected and requested that the jury be removed from the courtroom. Sloan then moved for a mistrial.[3] The trial court sustained the objection and instructed the jurors to disregard the answer. The jurors were asked if they could disregard Green's answer, and all indicated that they could. The trial court then allowed the trial to proceed. The trial court formally denied the mistrial later in the proceedings.

As this court stated in *Parks v. State:*

"The trial court is deemed to be in the best position to assess the impact of a particular event upon the jury. Thus, the decision of whether to grant or deny a motion for mistrial is committed to the sound discretion of the trial court and will be reversed only upon an abuse of that discretion. A mistrial is an extreme remedy and should only be granted when no other remedy can cure the error." 734 N.E.2d 694, 697 (Ind.Ct. App.2000) (citations omitted), *trans. denied.*

Sloan claims that because Green was a child abuse sex crimes detective and because he indicated that Sloan was arrested on another investigation, it follows that the jury would conclude that Sloan was arrested on another charge involving sexual child abuse. We note, however, that the detective did not state that *he* had arrested Sloan, but that Sloan was arrested on another investigation. Given that the trial court admonished the jury to disregard Green's answer, and that all the jurors indicated that they could do so, we cannot say that the trial court abused its discretion in denying Sloan's motion for a mistrial.

## II

### Directed Verdict

■ Sloan argues that the trial court erred in denying his motion for a directed verdict, also known as a judgment on the evidence.[4] *See* Ind. Trial Rule 50. For a trial court to grant a motion for a directed verdict, there must be a total lack of evidence regarding an essential element of the crime, or the evidence must be without conflict and susceptible only to an inference in favor of the defendant's innocence. *Barrett v. State,* 634 N.E.2d 835, 837 (Ind. Ct.App.1994).

In Count I, Sloan was charged with Burglary, with "intent to commit the felony of dissemination of matter harmful to

---

3. Green's answer appears to have violated a motion in limine prohibiting the introduction of evidence regarding other crimes Sloan may have committed. *See* Tr. at 141–42.

4. We note that in his appellant's brief, Sloan claims that the trial court erred in denying his motion to dismiss. Sloan did move to dismiss the charges against him prior to trial. At the close of the State's case-in-chief, Sloan moved for a directed verdict based upon the same grounds. Upon appeal, Sloan refers to both motions as motions to dismiss. However, the second motion, upon which Sloan bases his appellate argument, was a motion for a directed verdict, and we address it as such.

minors ... that is: with intent to knowingly or intentionally engage in or conduct a performance before a minor that is harmful to the minor, that is: display his naked penis." Appendix at 21. In Count II, it was alleged that Sloan "did knowingly or intentionally engage in or conduct a performance before [A.R.], a minor[,] that is harmful to the minor, that is: displayed his naked penis." *Id.* This tracks the language of I.C. § 35–49–3–3(a)(5), which makes it a Class D felony to "knowingly or intentionally ... engage[ ] in or conduct[ ] a performance before minors that is harmful to minors." Because the trial court did not enter a judgment of conviction upon Count II, the only issue before us is whether the evidence is sufficient to sustain Sloan's Burglary conviction. *Cf. Carter v. State,* 750 N.E.2d 778 (Ind.2001) (distinguishing a guilty verdict from a judgment of conviction and holding that a jury verdict upon which trial court does not enter judgment creates no problem for purposes of double jeopardy).

■ Here, Sloan contends that there was a total lack of evidence that he engaged in a performance. Though such would be required to sustain a conviction for conducting a performance harmful to minors, no judgment of conviction was entered upon that count. Nevertheless, the question of whether Sloan engaged in a performance is relevant to the Burglary conviction in that conducting a performance harmful to minors was the felony which Sloan allegedly intended to commit when he broke and entered the Holt home. If Sloan did engage in a performance once inside the home, a reasonable inference could be drawn that this is what he intended to do when he broke and entered into the home. Thus, the question before us is

not precisely whether Sloan actually engaged in a "performance," but whether he *intended* to conduct such a performance when he broke and entered into the Holt home.[5]

A "performance" is statutorily defined as "any play, motion picture, dance, or other exhibition or presentation, whether pictured, animated, or live, performed before an audience of one (1) or more persons." Ind.Code § 35–49–1–7 (Burns Code Ed. Repl.1998). Pursuant to Indiana Code § 35–49–1–1 (Burns Code Ed. Repl. 1998), this definition applies to all crimes in Title 35, Article 49. This definition was expounded upon in *Riffel v. State,* 549 N.E.2d 1084 (Ind.Ct.App.1990), *trans. denied,* and *Low v. State,* 580 N.E.2d 737 (Ind.Ct.App.1991).

In *Riffel,* the defendant and his friends engaged in various sexual acts in front of the defendant's five-year-old son. Riffel also instructed his son to engage in sexual acts in front of Riffel's friends. As a result, Riffel was charged with engaging in an obscene performance. This crime is defined by Indiana Code § 35–49–3–2 (Burns Code Ed. Repl.1998):

> "A person who knowingly or intentionally engages in, participates in, manages, produces, sponsors, presents, exhibits, photographs, films, or videotapes any obscene performance commits a Class A misdemeanor. However, the offense is a Class D felony if the obscene performance depicts or describes sexual conduct involving any person who is or appears to be under sixteen (16) years of age."

Upon appeal, the *Riffel* court, construing the definition of "performance" found in I.C. § 35–49–1–7, held that:

---

**5.** One may be convicted of Burglary regardless of whether one completes the felony alleged to have been intended at the time of the breaking and entering. *Quire v. State,* 449 N.E.2d 1083, 1084 (Ind.1983).

"the purpose of those statutes, and the legislative intent revealed by the language used, is to prohibit obscene performances of a theatrical, show, or entertainment nature, performed live, or on film or video, before an audience, and *not to ban an act in a private setting,* no matter how disgusting, such as the act charged against Riffel in Count IV. Riffel's conduct may or may not have constituted some other offense, a matter we need not decide. The crucial issue is that it did not constitute a performance as defined by Indiana statutes. We may not expand the statutory definition." 549 N.E.2d at 1088 (emphasis supplied).

The *Riffel* court distinguished the case before it from that present in *Fultz v. State,* 473 N.E.2d 624 (Ind.Ct.App.1985), wherein the defendant stood before his bedroom window and masturbated while being observed by two individuals. Fultz was charged with engaging in an obscene exhibition, which required proof of an "obscene performance." *Id.* at 629. The definition of performance in *Fultz* was the same as that at issue here. The *Fultz* court sustained the conviction against the defendant's challenge that there was no "audience" and therefore no performance. *Id.* The *Riffel* court stated that "[t]he public nature of the acts committed by Fultz clearly are [sic] different from the *private* setting of the act charged against Riffel in Count VI[sic]." [6] 549 N.E.2d at 1088–89 (emphasis supplied).

In *Low, supra,* the defendant was charged under I.C. § 35–49–3–2 after she engaged in a sexually suggestive dance, exposed her breasts, and masturbated in front of an undercover police officer while the two were in a hotel room. Upon appeal, Low cited *Riffel* in support of her argument that she did not engage in a performance as defined by I.C. § 35–49–1–7, in that the conduct alleged occurred in a private setting. The *Low* court rejected the State's attempt to distinguish *Riffel* upon grounds that Low had engaged in her conduct for money. 580 N.E.2d at 739–40. The *Low* court reversed the conviction for obscene performance, noting "if the statute is not narrowly construed, conduct similar to the acts in this case occurring between consenting married adults would fall within the purview of the statute." *Id.* at 740. The *Low* court also observed, "To hold differently in the present case might allow the extension of the proscriptive reach of the statute to conduct which is constitutionally protected." *Id.*

Sloan contends that, like the conduct involved in *Riffel* and *Low,* what he did was done in a private setting, and therefore may not be held to constitute a performance. The State claims that the statute does not require that the performance take place in public. The State bases its argument upon I.C. § 35–49–3–3(a)(5), which prohibits knowingly or intentionally engaging or conducting "a performance that his harmful to minors in an area to which minors have visual, auditory, or physical access, unless each minor is accompanied by the minor's parent or guardian." According to the State, all it needed to prove in this respect was that A.R. had access to the area in which Sloan exposed himself. First, we note that this was not the language used to charge Sloan. More importantly, both section 3(a)(4), which contains the language used to charge Sloan, and 3(a)(5) require that a "performance" be engaged in or conducted.[7] The

---

6. The reference to "Count VI" is an obvious scrivener's error in that the charges against Riffel were comprised of but four counts.

7. The State's reference to *Lewis v. State,* 726 N.E.2d 836 (Ind.Ct.App.2000), *trans. denied,* is unavailing; in that case, the question of

State does not otherwise address Sloan's argument that his conduct was not a performance.

If we were to read *Riffel* and *Low* broadly, we might agree with Sloan that what he did inside the Holt home, and what he intended to do when he broke into the house, was not a "performance" within the meaning of the statute because it did not take place "in public." However, we perceive a subtle yet substantial difference between the factual situations present in *Riffel* and *Low* and the case at bar. In *Riffel*, the defendant's conduct was done in his own private residence. 549 N.E.2d at 1086. In *Low*, although the conduct at issue did not occur in a private residence, it did take place in a hotel room which had been rented by the police. 580 N.E.2d at 738. In both cases, the incidents took place in private areas in which the participants had a right to be. This is not so in the present situation.

Here, Sloan violated the privacy of Ms. Holt and her guests by breaking into the home. The privacy interests with which the *Riffel* and *Low* courts were so concerned are therefore not implicated by Sloan's actions. A defendant may not avail himself of the privacy of another by breaking and entering into the other's home. To accept Sloan's argument would be to allow him to benefit and seek refuge in the privacy of the home which he had invaded. We will not do so. Here, the evidence reveals that Sloan broke into the Holt home and pulled down A.R.'s underwear. Sloan then sat on the couch and exposed and manipulated his penis. This was an exhibition or presentation performed before an audience of one or more persons. *See* I.C. § 35–49–1–7. We do

not read *Riffel* and *Low* to hold that a "performance" must be done in public, and to the extent that they suggest otherwise, we respectfully disagree. So long as the conduct at issue was not done *in private*, we hold that it may constitute a performance.[8]

Of course, if something is done in private, it usually follows that it was not done in public. Here, however, we are presented with a perhaps unusual situation; although Sloan's acts were not done in public, neither were they done in the privacy of his own home or any place where he had a right to be. We therefore hold that the actions Sloan engaged in inside a home into which he broke and entered constituted a performance, and from this the jury could reasonably infer that when Sloan broke and entered the home, he intended to commit the felony of conducting a performance harmful to minors. The evidence is sufficient to support Sloan's conviction for Burglary, and the trial court did not err in denying his motion for a directed verdict.

## III

### *Sentencing*

The trial court sentenced Sloan to twenty years incarceration upon his Burglary conviction, the statutory maximum sentence for a Class B felony. Ind. Code § 35–50–2–5 (Burns Code Ed. Repl. 1998). Sloan claims that the trial court erred in ordering him to serve the maximum sentence. Sentencing decisions rest within the sound discretion of the trial court and are reviewed only for an abuse of that discretion. *Kien v. State*, 782 N.E.2d 398, 410–11 (Ind.Ct.App.2003),

---

whether the defendant conducted or engaged in a performance was not at issue.

8. In this regard, we do not limit "performance" to commercial or recognized entertainment media such as plays, motion pictures, concerts and the like.

*trans. denied.* Here, Sloan claims that his sentence is inappropriate.

■ Indiana Appellate Rule 7(B) states that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *See Kien,* 782 N.E.2d at 416. The presumptive sentence is meant to be the starting point for any court's consideration of the appropriate sentence for the crime committed. *Meadows v. State,* 785 N.E.2d 1112, 1128 (Ind. Ct.App.2003), *trans. denied.* Courts may then deviate from the presumptive sentence based upon a balancing of the aggravating and mitigating factors which must be considered pursuant to Ind.Code § 35–38–1–7.1(b) and (c), as well as the other factors left to the trial court's discretion. *Id.* We must, however, refrain from merely substituting our opinions for those of the trial court.[9] *Bennett v. State,* 787 N.E.2d 938, 949 (Ind.Ct.App.2003).

■■ The thrust of Sloan's argument is that he is not the worst offender and his was not the worst offense. It has been often stated that the maximum sentence should generally be reserved for the worst offenders and offenses. *See e.g. Buchanan v. State,* 767 N.E.2d 967, 973 (Ind.2002). This should not be taken as a guideline to determine whether a worse offender could be imagined, as it will always be possible to identify or hypothesize a significantly

more despicable scenario. *Id.* Although maximum sentences are ordinarily appropriate for the worst offenders, we refer generally to the class of offenses and offenders that warrant the maximum punishment. However, this encompasses a considerable variety of offenses and offenders. Here, Sloan had a prior criminal history including convictions for criminal trespass, possession of marijuana, and public intoxication. More importantly, he broke into an occupied home, pulled down the underwear of an eight-year-old girl, exposed his penis, and apparently began masturbating in front of her.[10] Under these circumstances, we cannot say that Sloan's twenty-year sentence is inappropriate.

The judgment of the trial court is affirmed.

BAKER, J., and DARDEN, J., concur.

---

9. Sloan argues that the amendments to Appellate Rule 7(B), abandoning the older "manifestly unreasonable" standards and adopting the "inappropriate" standard has effectively eliminated any discretion by the trial court in sentencing matters. While we acknowledge that the newer inappropriate standard is broader than the manifestly unreasonable standard, we do not agree with Sloan that this has somehow eliminated our traditional deference to the trial court's sentencing decision.

10. Sloan also refers to circumstances which could be considered mitigating. However, the trial court found no mitigating circumstances. A trial court is neither required to find mitigating factors nor accept as mitigating the circumstances proffered by the defendant. *Kien,* 782 N.E.2d at 415. Sloan does not argue that the circumstances to which he refers were overlooked by the trial court.